We'll hear the last case to be argued, or at least one side, DeBello v. VolumeCocomo. Thank you. May it please the Court. My name is Valdi Likul. I represent Glenda Bello. The forum selection clause at issue in this case should have been invalidated because it violated the rules set forth in Bremen, which holds that forum selection clauses that violate the strong public policy of a forum are invalid, and that public policy mandate would come from federal statutes and or cases. And in this case, Title VII has its own specific venue provision, which creates a hierarchy. It states that an employee may bring a claim in one of three venues, each of which has some local connection to what happened, either where the discriminatory acts occurred, where the relevant documents are maintained and administered, or where the person would have worked. If one of those three are not met, it is only under those circumstances that a plaintiff could bring a case in the defendant's home. In this particular case, Mr. DeBello could not have brought, absent the forum selection clause, could not have brought his claims in California, because none of those three requirements are met. Nevertheless, the forum selection clause turns Title VII's venue provision on its head, because it makes the defendant's home forum the only place where he could bring the claim. If he had done that, it would have been the wrong forum, absent the forum selection clause. Now, this preference and public policy for local adjudication of discrimination claims is also confirmed by the legislative history of Title VII. The legislative history shows that a prior version of the venue provision included the defendant's home forum as one of the preferred venues, and it was altered. And the legislative history shows that it was altered. Why does that — that all is obviously the law with respect to where the claim could be brought, absent agreement. But what suggests that this is such a strong public policy that it should trump the usual rule that the parties can contract for a particular venue? Well, again, Your Honor, the structure of the statute, of the venue provision, because it doesn't only say where the venue provision is, it says where the venue provision is. And where it can be brought, it also excludes the home forum from an appropriate venue where one of the other three is available. So that is a strong indicator of public policy that it should be brought in where these acts occurred. There's also case law. But, of course, your client would have been permitted to agree to forego courts altogether and have an arbitration in California. Yes. But — well, he would have been permitted to have an arbitration, not necessarily in California. And I say that because when arbitration is involved, the calculus is different, because we also have a thumb on the scale of arbitration because of the FAA. And that's this Court's decision in Harrington. And there's actually a decision by Judge Buchwald, who actually decided this case, in a case called Dimitri, which is also cited, where she holds that the appropriate forum is arbitration, but not, I believe, in the Virgin Islands. Because arbitration is appropriate because of the FAA, but the location is inappropriate. But that would be an undue hardship in that case. Well, because that was another — I believe that was a Jones Act claim, which also has a special venue provision. But you aren't arguing inconvenience and you aren't arguing hardship. We are not arguing inconvenience or hardship. Essentially arguing just public policy. Right. And that comes from this Court's decision in Martinez, which — Martinez, the litigant — correct me if I'm wrong — was sent to London, right? The litigant was sent to London, but the litigant's public policy argument was not in local adjudication. He could not make that argument. He lived, worked, was planning on becoming a citizen of the U.K. And therefore he — the local venue in that case would have been the U.K. His argument was, however, that because he no — because the U.K. would not recognize his local claims, and because those — his U.K. comparable claims were barred, that he no longer had a remedy available to him. Why does the public policy trump your client's agreement after having been advised by counsel to consent to litigation in California? Well, Your Honor, the agreement creates a presumption. And clearly under Bremen and Atlantic Marine, there is a presumption in favor of the venue in the agreement. The presumption arose from an agreement your client made having been assisted by counsel, and he was a relatively well-compensated executive, so he's — right, but the presumption is not irrebuttable. So in every case in which we get to the four Martinez invalidating factors, we'll have a presumptively — a presumptively valid form selection agreement. In other words, we only get to the — to the four invalidating factors under Martinez, which is overreaching, unfairness in the law, public policy, or lack of a remedy. Those are the four. Only where there is a presumption — and I agree, Your Honor. You're only arguing one of those, which is the — That's right. Would you — do you think you went on any of the other three? We did not argue — no, Your Honor, we did not argue one of the first two, and we did not argue the fourth. And that's where we think that the district court made an error, because those are disjunctive. They're in the or. And I think here, although we argued public policy in a local forum, the district court said, recognize that that was a policy, but then looked at the private factors. He has state and city claims? He does. And could he assert them in California? We would argue that he can and would. He wouldn't be able to assert California claims? He didn't work in California. Yeah, he wouldn't be able to do it in the reverse. And certainly no argument has been made here, because the choice of venue also includes a choice of law provision. But no argument — Does the presence of New York claims help your policy argument? Certainly, because New York has its own special interest in local adjudication. We have here in New York City a very powerful anti-discrimination law, as this court held in Mahalik, which is much more protective than the federal law. And New York has a much greater interest in enforcing its own laws with respect to discrimination than California does. This is not a case where we're talking about two — Yes. Yes. Yes, Your Honor. I mean, there is a local interest here. And I think what the cases in the legislative history bear out is that the reason for the local — for the venue provision is not simply to make it easier to bring claims, which clearly that's one of the provisions, as in this Court's decision in Red Bull. It's also to have the local — the locality be involved in the adjudication. As I was about to say, this is not a claim among corporations about, you know, who's to blame for the destruction of a barge in international waters, which is the Bremen decision. This is about somebody who lived in New York State, worked in New York City, was sexually harassed in New York City, and then fired in New York City. That is a deep local interest here. And the cases that we lay out in our brief, like Louderis, Arroka, and Sapansky, all recognize that that is also an interest. And no amount of litigating in California is going to vindicate that local interest. If I may, I just would like to also just briefly, with respect to some of the other cases cited by the defendants, there are — Can I just ask about the issue of employment records relevant to such practice? Are there — what is the state of the record on employment, the location of employment records? We're not — well, first, Your Honor, the defendants did not argue that that — Now, as far as we can tell from the record, defendants argued that there are human resources and pay records in California. We're not sure what those are. Those have never been shown to us. Well, but I guess the critical answer is the defendant never raised this issue. Yes. No, that's really not the case. In addition to that, Your Honor — absolutely. But in addition to that, a record has to be both maintained and administered. So let's assume that they wrote a piece of paper that said Glenn DiBello was fired and stuck it in a file in California. It would be maintained in California, but it wouldn't be administered until he was actually fired, which would be here in New York. And that's this Court's decision in Flaherty, which says that where the decision is made is not the adverse action, but actually where it's executed, the firing decision. And unless the Court has any other questions. Thank you.